of America Appellate. Ms. Herron for the Appellate, Mr. Gilmour for the Appellate. Ms. Herron, good morning. Good morning. May it please the Court. My name is Rachel Herron on behalf of the United States. With the Court's permission, I'd like to reserve three minutes for rebuttal. This Court should reverse the District Court's order denying the United States motion to dismiss. In this lawsuit, Guam is explicitly seeking to recover the cost of actions that, according to Guam's own complaint... Let me stop you and ask you to move the speaker up or get a little closer to it or something. Is that better, Your Honor? Apologies. This Court should reverse the District Court's order denying the United States motion to dismiss. In this lawsuit, Guam is explicitly seeking to recover the cost of actions that, according to Guam's own complaint, Guam is obliged to take by a 2004 consent decree with the EPA, and that also, according to Guam's own complaint, constitute response actions within the meaning of CERCLA. Under Section 113 F.3.B. of CERCLA, a party has three years to bring a contribution action after the entry of a consent decree that resolves that party's liability for some or all of a response action. Guam waited more than a decade. For that reason, the contribution claim that Section 113 F.3.B. afforded to Guam is now time-barred. Because that claim... I want to ask you just about the last few words of F.B.3 that neither of the parties focus on. It says, you can bring a claim against a potentially responsible party only if that party is not party to a settlement under F.2. And in this case, the United States is a party to the settlement. So how can Guam bring a case under 113 F.B.3? It's an interesting question, Your Honor, but it's not one that we've considered here in the briefs. Right on both accounts. So what does it mean? It looks... That's the plain language of the statute says Guam can't use 113 because the United States is a party. It's the plain language of the statute. Your Honor, I think that that provision of the statute may not... From any person who is not a party to a settlement referred to in paragraph two refers to a person who has resolved his liability to the United States or state in that paragraph. It doesn't say that. And why would it say that? Well, because... And I think here, something important to keep in mind as well is that the person who has resolved his disputes under F.2 or has not. I read the reference that you're referring to at the end of 113 F.3.B. may seek contribution from any person who is not a party to a settlement referred in paragraph two. To refer to in paragraph two, which is 113 F.2, begins a person who has resolved its liability to the United States or state in an administrative or judicially approved settlement shall not be liable for claims of contribution. So I agree that the wording of that last provision could be read to mean that you can't bring the suit potentially against either the person that has resolved its liability in that consent decree or the United States or the state, but I don't think that that broader reading makes sense. And I also think that here, it's also important to keep in mind that the 2004 consent decree is between Guam and the EPA. Certainly, the EPA is an agency of the United States, but the federal government can wear multiple hats when it's involved potentially in these kind of contaminated sites, where here, EPA, the 2004 consent decree between Guam and the EPA is between Guam and the United States as regulator, whereas in this action, Guam is attempting to sue the United States in its capacity as potentially another potentially responsible party at the site. So I see Your Honor's point about the potential, you know, very broad reading of that language at the end of 113 F3B, but I think that the better reading of the statute is simply that it was trying to cut off, you know, the ability to bring a contribution action against someone who, under 113 F2, has already resolved its liability and thus gained immunity from contribution suits. And also here, in this context, the 2004 consent decree, you know, because it is between Guam and EPA. Well, let me ask you a related question about that. Certainly. 107 is a waiver of sovereign immunity, correct? That's what 107 is? Yes. But what in 113? Is there any indication that in passing this Congress intended to waive the government's sovereign immunity? For contribution actions? Yes. Yes, there is. Where? I apologize, Your Honor, that I don't have a particular provision to show you right now. But... Is it in the statute? I'll have to look, Your Honor. Maybe you can get it when you come up with it. Yes, I think I can certainly do that. And, but contribution actions under 113 are, have been brought against the federal government, can be brought against the federal government. There's never been a sovereign immunity bar to those kinds of cases in which the, in which someone is seeking to recover against the United States in its capacity as a potentially responsible party at a site. Is it your position that you can bring a contribution action against the U.S. if you've settled with the U.S.? Yes, I mean, that's precisely what happened here. And what does the settlement achieve? What the settlement achieves is that it places an obligation on the person who settled to begin performing response actions. Without a settlement in place, the only avenue for relief that a person at a site would have against the United States would be to bring a cost recovery action under Section 107. But they could only under, they could only bring a 107 action after they had already incurred response costs at the site. So the concern, and that animated the contribution provisions of CERCLA, is that it's quite a lot to ask a party. And there is a hesitance on parties to perform a full response action and then wait and then sue under 107 when they don't know what the ultimate outcome of that 107 action will be. The idea of having the 113 process is that we get these determinations out of the way early. We get some certainty as to what actions are going to be performed, at least in the first instance. And then there is this short three-year statute of limitations for seeking contribution. So it gets that process rolling and prevents the situation where you have these sites that could sit out there for years or decades while people sort of wait to see who will move first. Or where the United States, in its capacity to protect the public health and welfare, will have to move first and expend public funds and then, after the fact, go after those who are also responsible at the site. So if I could, Your Honors, I'd like to focus on the earlier language of 113F3B before the piece that Judge Tatel drew the Court's attention to, which is that this section provides a contribution action for, quote, a person who has resolved its liability to the United States or a state for some or all of a response action. And I think what's important to keep in mind here is that unlike CERCLA's other contribution provision, F1, there is no requirement in the language of the statute that says that the liability that has to be resolved is liability under CERCLA or liability under any particular legal claim. It simply requires the resolution of liability for some or all of a response action. For that reason, the hallmark of a consent decree that will give rise to an action under 113F3B is that the consent decree settles with finality at least some subset of actions that the person settling will have to perform at this site. So long as it does so, other features of the consent decree going to whether the underlying claims that gave rise to the consent decree have been resolved are immaterial. In our view, that's where the district court went wrong here. The three features of the consent decree that the district court focused on, the non-admission of liability, the reservation of certain rights, the statement that release and settlement of the claims would be contingent on performance. Those all go to the question of whether there is a resolution of the underlying claims. But that is not what 113F3B requires in order for a response action to be afforded. And then I would also point out that those provisions that the district court found troubling here are common in CERCLA settlements certainly, but also in settlements outside of this area. They are common features that people enter into when they are entering into a settlement. And in fact, they are features that Section 122 of CERCLA, which in our view, as we've said, and under the terms of the statute, it need not be a CERCLA settlement in particular to trigger a 113F3B action. But certainly, a CERCLA settlement would. Even Guam agrees that. But Section 122 of CERCLA specifically authorizes, and in the case of the conditional covenants, requires consent decrees to have each of these features. So it would be odd indeed and inconsistent with the statute if those features nevertheless prevented a finding that a consent decree resolved liability. And we think the reason that the district court was even focused on those features in the first place was because of this misunderstanding as to the difference between resolving liability for a response action and resolving liability for claims. I see that there's about four minutes left on the clock, Your Honors. And I will reserve the rest of that time unless there's another question. All right. Thank you. Thank you. Mr. Gilmour. Good morning. Good morning. May it please the court. John Gilmour on behalf of the people in government of Guam. Your Honors, this case is about the United States' dominance and control of Guam for the better part of a century and its ongoing recalcitrance to take responsibility for its historic actions. The U.S. acquired Guam in 1898 in resolution of the Spanish-American War and the Treaty of Paris. It designated Guam, an island with a population, as a naval vessel. Until 1950, it was the USS Guam and overseen by the United States Navy. That time frame encompassed pre-World War II, the occupation by the Japanese during World War II, the liberation in 1944, the cleanup after the war. What the United States consistently omits in its briefing and its argument is that the Ordot dump was created, owned, operated by the United States for that entire time. Pre-World War II, it was a ravine into which the United States military dumped its waste. During World War II, the Japanese troops, post-World War II, or post-liberation in 1944, the United States resumed using the Ordot dump as a waste disposal area and continued to do so through the 1960s. Even after they had created the government of Guam through the Organic Act in 1950. Most telling is that from 1944 until 1950, 100% of the island of Guam was owned and 70% of the island of Guam was occupied and operated by the United States military. The United States set up and established all of the island's infrastructure post-World War II. The Ordot dump is unlined because of the design implemented by the United States. Leachate, the subject of the Clean Water Act complaint and consent decree at the core of today's discussion, escaped from the Ordot dump because of the United States design. That leachate could contain, could it not, materials that would ordinarily be subject to remediation under CERCLA? Yes, Your Honor, they could, but it's not clear. One of the things that I was going to discuss is that CERCLA and RCRA require hazardous wastes. Hazardous wastes are defined terms under the statutes. The Clean Water Act is designed to address pollutants. Pollutants are also a defined term under the statute. Pollutants are much broader than hazardous substances. Hazardous substance has to be listed in the Federal Register. Maybe that bears on this question. Why didn't Guam assert a contribution claim under CERCLA in response to the 2002 action? The 2002 action, Your Honor, was a Clean Water Act violation. And pollutants, which are the subject of the Clean Water Act, can include such things as sand, dirt. But this case was brought under the Clean Water Act, too. I'm sorry, Your Honor? The complaint in this case is based on the Clean Water Act also. No, Your Honor, it's not. It's based under CERCLA cost recovery. Where is that in the record? I thought I was looking at the proper page at 112. Is that not the current complaint? Give me one second, Your Honor. The amended complaint, Your Honor, is in Joint Appendix 21. 21? Yes, Your Honor. And the claims for relief, Your Honor, are located at pages JA-26 through 29. Thank you. As I was saying, Your Honor, the pollutants are much broader. And even such things as heat can constitute a pollutant under the Clean Water Act. But it is not a hazardous substance under CERCLA. They are not one and the same. And because the Clean Water Act complaint and the Clean Water Act consent decree all address only Clean Water Act violations and only address pollutants, there is no indication that there is any resolution of any other liability. In fact, we would argue that there is no resolution of liability even as to the Clean Water Act claims because of the broad reservation of rights that the United States has. It specifically states that abiding by the consent decree does not guarantee compliance with the Clean Water Act and in no way affects the government of Guam's responsibilities to comply with all applicable federal and territorial laws and regulations. That's at paragraph 47. Under 113, the question is whether what Guam was required to do was a response action. That's the question, right? No, Your Honor. That's what the statute says. I would respectfully disagree. I agree that the statute says it, but I think the key here is that there was resolution of liability for a response action. And under the consent decree, the consent decree relates back to the complaint, and the complaint sought to require Guam to build a cover, right, and ultimately to close it. Isn't that a response action? Your Honor, the complaint actually, the two claims in the complaint are solely for permit violations and civil penalties. Paragraph 27 of the complaint. What about the injunction? The injunction simply was a request, this is paragraph 1 of the prayer for relief, ordering the government of Guam to comply with the Clean Water Act. That is all that was required. What about the requirement to put a lid on a cap? That's not injunctioned. As part of the consent decree, there was a requirement that they install a cover over the Ordot dump. The cover would solely serve the purpose as preventing rainwater from percolating through, causing leachate to come out and potentially reach the Lawn Fit River, which is arguably the water of the United States. I'm looking at the language of F3B. Yes, Your Honor. Guam has, quote, resolved its liability to the U.S. for some or all of a response action. Some or all of a response action. But, Your Honor, liability is a defined term in the statute, in CERCLA, and it references the Water Pollution Control Act, 33 U.S.C. section 1321. Therein, the Water Pollution Control Act defines liability as requiring hazardous substances. There is no indication in either the Clean Water Act complaint or the Clean Water Act consent decree that hazardous substances are being abated by any actions. The sole focus is on leachate that is arguably reaching waters in the United States. That is very different than a response action under CERCLA, which mandates for cleanup. What's your reaction to the discussion we were having with Ms. Herron about this language in FB3, which says, may seek contribution of any person who is not party to a settlement under F2? And the fact is that that who is not party, and the fact is that the United States is. Is there a reason you didn't argue that? I would argue that there are not, Your Honor, because this is specific. You would argue what? I'm sorry? What would you argue? Sorry. I would argue that F2 is inapplicable because that is a specific provision for contribution protection for CERCLA and RCRA-specific settlements, which this is not. Okay. All right. Is that because of the language that says—here, let me find the statute. Is that because of F2? A person who has resolved its liability to the U.S. or a state in an administrative or judicially approved settlement. It doesn't say anything about CERCLA. It just says a person who has resolved its liability to the U.S. or state in an administrative approved settlement. I agree with the language, Your Honor. I would argue that because it's found within 9613 of CERCLA, that it is referencing CERCLA-specific settlements, which are discussed in 9622, part of the same subchapter. Well, F1 refers to CERCLA, but F2 doesn't. F1 refers to the cost recovery provision. My point is it refers to this statute, which suggests that F2 is broader. If Congress had wanted to limit F2 to CERCLA, it would have said what it said in F1. Is that right? I would agree that it is broader than F1, yes, Your Honor. Okay. So you don't want to rely on that provision in FB3 and just say, well, look, the United States is a party to this settlement, so you can't pursue—LOM is not—113 is not triggered. That's correct, Your Honor. We argue that 9613 was not triggered, that we can pursue a— No, no, no, no. If this language could help you, because the United States is a party to this decree, right? Yes, Your Honor. And if it is, under this language, Guam could not pursue a Section 113 action. You could only pursue under 107. But you chose not to rely on that, right? Until this point, Your Honor, yes. Well, but— May I amend our pleading? No. No, I thought you said, I thought you ended up agreeing with Ms. Haran, which is that I thought you said that F2, that F3B, F3B refers you back to F2, right? Yes, Your Honor. And that is a person who has resolved its liability to the United States. Yes, Your Honor. And her position is that can't be—that's not the United States, right? So this—right? I don't know. This is not the clearest statute, is it? Isn't the person referred to in F3B a potentially responsible party? It is not the U.S., because the U.S. is separately referred to in all of F as the United States, not as a person. So I think F3B, when it says, may seek contribution of any person who is not a party referred to in paragraph 2, it is simply repeating what F2 says. That is, that a potentially responsible party who settles with the U.S. is not liable for contribution claims from other potentially responsible parties, but the latter group is not discharged from liability. In other words, the two sections are saying the same thing. I would tend to agree with the analysis, Your Honor. The only complicating factor that I would point out is that person is a defined term within CERCLA and does include the United States. However, I agree, given the wording of the statute, that it's referred to as the United States and not as a person, I would agree with the analysis. Well, if you just look at 3B, it says a person who has resolved its liability to the United States. That is—it doesn't say the United States, which has resolved its liability to the United States. It's got to be somebody other than the United States in this provision. I would agree. Well, but wait. But in this case, one of the potentially responsible parties is the United States, right? Yes, Your Honor. We are in a— So, I mean, that's what's odd about this case, is that it's brought by the United States, but a potentially responsible party is the United States. Yes. So the language of F2, F2, a person who has resolved its liability, is that the Navy? Our position, Your Honor, is that there was no resolution of liability in the 2004 Clean Water Act consent decree. Correct. Therefore, 9613 was not triggered at all. Right. So if you stop using the word United States and just use the word Navy, right? Then—well, you can't do that. Forget it. Forget what I was going to say. It doesn't work. Yes, Your Honor. I don't understand. Can I ask you one thing? You originally brought the 107 action. Yes, Your Honor. Originally, we brought a 107 action, a claim under CERCLA for injunctive relief, and in the alternative, a 113 action, which the district court dismissed. Okay. But the 107 presumes that there are some hazardous substances. I just want to get clear. You've been talking about pollutants and leachates. There are some hazardous substances. Your Honor, in the past, since the on-site construction started in 2013, there has been extensive sampling, and, yes, there are hazardous substances present. Right. Okay. Do you have anything, any thoughts about my question to Ms. Herron about sovereign immunity waivers? 107 is a clear waiver of sovereign immunity. She says that 113 FB3 is also. Do you agree with that? I do, Your Honor. Where is it? I mean, waivers of sovereign immunity have to be clear, correct? Yes, Your Honor. So you've got to find something in the statute that says that the United States can be sued for contribution. Yes, Your Honor. We know it can be sued for costs, but what about contribution? Where does it say that? I don't think there is a specific waiver within 9613 as there is in 9607. I think that has been the practice of the United States, and I would defer to Ms. Herron regarding that, but it has been the practice to be subject to 9613 contribution actions. This would help your case, do you think? Yes, Your Honor. I agree it would. All right. But you think there is a waiver somewhere. You're willing to rely on the government for that proposition? I am telling Your Honor that I am not aware of a specific waiver of sovereign immunity in 9613, but I am not aware of case law holding that sovereign immunity in the United States either. Well, I only care for starters about what the statute says because that's where you've got to find a waiver of sovereign immunity. Are there lots of other 113 actions for contribution against the United States? There are some, yes. Any in appeals courts? Not currently pending that I'm aware of. No, I mean are there any appeals court decisions, opinions? Not addressing the sovereign immunity of 9613 that I am aware of, Your Honor. All right. Thank you. Sorry, my time has expired. Can I ask you one more question? Absolutely, Your Honor. On F1, the contribution provision, do you read it as I do that you can either bring a contribution cause of action as part of a 106 or a 107 action, or you can bring a freestanding contribution claim? I read 96F1 to state that if you as a potentially responsible party are a defendant in a 106 or 107 action, then you may bring a contribution claim against another potentially responsible party. All right. Just concentrate on that last sentence. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action. Yes, Your Honor. I think that would then allow a freestanding contribution. Yes, Your Honor. All right. Thank you. Thank you. How much time is miss hearing? One minute. Okay. Your Honors, if I could, I'd like to jump right back into Judge Tatel's question about 113F3B and how we know that a suit can be brought against the United States. So I would direct, Your Honors, to two provisions. First, 113F3B itself, which says that, as we've been discussing, that a person may seek contribution from any, quote, person. And then I would refer back to the section 101, subsection 21, person includes United States government. So I think that should resolve that issue. Well, except for the last part of the sentence. Yes. And with regard to that sentence, you know, I agree, Your Honor, that there is unfortunately, as with many things about CERCLA, as the courts have noted, it's not a model of clarity. But I think that the You know, we still have to figure it out. Yes. I think that the reading of that section, of that last sentence, that makes the most sense is, as Judge Henderson was saying, that it is referring back to 113F2 and making clear that a person But that also starts with a person. That's true. Yes. And a United States government or an agency can be a person in this context because they can resolve its liability to the United States or a state in an administrative or judicially approved settlement. 113F2 then says that person shall not be liable for claims for contribution regarding matters addressed in the settlement. So what 113F2 is saying is that once you have entered into one of these consent decrees and resolved your liability, no one can bring a contribution action against you. And I think the clear import of that last piece of 113F3B is to make clear that the action that it gives does not override the protection that 113F2 provides to other persons who have also resolved their liability. But we know the United States is not a party to an F2 settlement, right? In this instance, no. No. I'm wrong or yes? I apologize. In this instance, there is no United States, no agency has resolved Is not a party to an F2 settlement. So, right? So, why isn't it just clear then? The complication here is that there is this 2004 consent decree, which, as we've said, is a settlement that resolves liability. It doesn't resolve the United States' liability for some of the response action. It resolves Guam's liability. But not the United States. That's correct. That's EPA. So it just seems to me that it says may seek contribution from any person who is not referred to in paragraph F2. So we look at F2, and we know the United States is not a party to an F2 settlement. So the plain language of the statute seems to suggest that Guam cannot bring an FB3 action. Well, I disagree, Your Honor. I think 113F3B says that a person who has resolved its liability to the United may seek contribution from any person who is not a party to a settlement referred in paragraph 2. Right. We go back to paragraph 2. We certainly, we totally agree on what the words are. I apologize. Neither one of us can figure out what the words are. So here we have, and then when we go back to 113F2, the only resolution of liability that's at issue here is the 2004 consent decree. The EPA is a party to that consent decree. Yes. But it is not. It didn't resolve its liability. It did not resolve its liability. It was the prosecuting agency. That's correct. That's what's so strange about this case. It is a little strange. And, you know, these kind of strange instances arise in CERCLA because the United States and states wear two hats, potentially, in these situations, where here we have a situation where the U.S. is a regulator, and so you have EPA taking actions, and we also have allegations that federal agencies are potentially responsible parties. So what about the sovereign immunity? And then I have a general question for you. Sure. So with regard to the sovereign immunity point, again, I would refer back to Section 101, Subsection 21, the definition of person, which explicitly includes the United States government, when the Congress then, in 113F3B, referred to being able to bring an action against a person. We know under the statute that person includes the United States. Isn't it possible that in this provision, persons or person is a shorthand for potentially responsible person? I mean, I haven't looked at the definition of potentially responsible person, but is it possible that that's just shorthand in this provision for the PRP, and they just didn't say it every single time they said person? In other words, the last sentence of F2 says, such settlement does not discharge any of the other potentially liable persons, unless its terms so provide, but it reduces the potential liability of the others, meaning other potentially responsible persons. Is the U.S. considered a PRP? We haven't. Guam certainly alleges that the United States is a PRP here. Well, under the definition of PRP. I mean, as a factual matter, we'd have the allegations and the complaint. The United States certainly falls under that definition. What's the definition of PRP? Well, here I think the relevant one would be owner or operator of the site. Given the allegations as alleged in the complaint, the United States Navy would certainly fit under that category. Okay. Judge Tatel, I thought you had indicated you might have another general question. Well, waivers of statute of sovereignty have to be clear, and if 113 isn't, then the way this statute would work is that Guam settled, so it gets the benefit of F2, right? Yes. It can't be no one can seek contribution from it, which is what Congress intended, right? That's correct. But it can only pursue to get its, it can only pursue the cost, what do you call it? It can only go under 107 to get its cost back from the United States, which is a clear waiver set of sovereign immunity. Why isn't that sort of a logical way to think about the statute? Well, I think that that's inconsistent with the language of 113 F3B, which says that, as we've discussed, a person who has resolved its liability to the United States or a State for some or all of response action can seek contribution from any person. Right. But as you and I both agree, this is an unusual case, because here the United States is both the prosecutor and the potentially responsible person. You have to figure out how the statute applies in that situation. Well, I think in terms of unusual, it's not sort of the standard way we think of these things working in most statutory contexts. But in the CERCLA context, it's not at all uncommon for the United States to be both regulator and potentially responsible party. I see. And the same is true for States. I see. This is certainly not the only kind of situation or the only case in which this issue has arisen, excuse me, in which there has been a suit for contribution brought against a federal agency in their capacity as a potentially responsible party. And we think that the reference to person and the use of person and the fact that person is defined to include the United States allows those actions to proceed against the United States and requires them to be brought when there is a resolution of liability under the 113 contribution provisions. The problem with kind of moving all of these into the 107 context, in addition to the fact that we think that the statute language calls for otherwise, is that the more that we are funneling actions under 107, the less value the 113 settlement process has. Because as we've discussed in 113F2, the protection that people who resolve their liability to the United States or State get is that they are protected from contribution suits, that is other 113 suits, not 107 suits. So the harder we make it to trigger a 113 action, the more we sort of read additional requirements into the statute. We're kind of devaluing 113 and making it less likely that people will enter into settlements in the first place, which is Congress's whole purpose in enacting this 113 provision. For these reasons, Your Honors, we would ask that the court reverse and dismiss the lawsuit. All right. Thank you.
judges: Henderson, Tatel, Ginsburg